UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, } | |
| } | |
| Appellee-Plaintiff, } | |
| } | |
| v. } | Case No.: 2:15-cr-00031-RDP |
| } | |
| DENNIS SHEPHEARD, } | |
| } | |
| Appellant-Defendant. } | |

**MEMORANDUM OPINION AND ORDER**

Defendant Dennis Shepheard brings this appeal under 18 U.S.C. § 3402 seeking review of the decision of the Magistrate Judge finding him guilty of two counts of harassing communications under Ala. Code § 13A-11-8(b). He also appeals the Magistrate Judge's sentence of 24 months' probation and the special condition that Defendant not contact the business office of the VA. Based on the court's review of the record and the briefs submitted by both of the parties, the court finds that the decision of the Magistrate Judge is due to be affirmed.

**I.     Proceedings Below**

On February 24, 2015, Defendant was charged with two counts of harassing communications under Ala. Code § 13A-11-8(b), as assimilated by 18 U.S.C. §§ 7, 13. (Doc. 1, pp. 1-2). Count One charged that, beginning on or about December 19, 2014 and ending on or about December 31, 2014, Defendant called the Birmingham VA Medical Center Business Management Office extension multiple times a day. (*Id.*). Count Two charged that, from January 1, 2015 through approximately February 3, 2015, Defendant called the extension of Libby McElroy, a Birmingham VA Medical Center employee, multiple times a day. (*Id.* at p. 2).

Following a June 8, 2015 bench trial, United States Magistrate Judge John H. England, III found Defendant guilty as to both counts. (Doc. 33). Although Judge England found that Defendant did not use any lewd or obscene words or language in his phone calls, and therefore did not violate Ala. Code § 13A-11-8(b)(1)(c), he did find that Defendant communicated in a manner likely to harass or alarm and that he made telephone calls with no purpose of legitimate communication in violation of Ala. Code § 13A-11-8(b)(1)(a) and (b). (*Id.* at p. 12).

Defendant filed a Motion for Judgment of Acquittal, arguing that the Alabama Harassing Communications Statute is unconstitutionally vague as applied to him. (Doc. 34). That motion was denied. (Doc. 39). On October 21, 2015, the Magistrate Judge sentenced Defendant to 24 months' probation as to Counts One and Two, concurrently. (Doc. 44, p. 6). As part of that sentence the Magistrate Judge ordered that Defendant not contact the business offices of any VA facility via telephone. (*Id.* at p. 7). The Magistrate Judge also ordered Defendant limit his communication with the VA to letters, but indicated that Defendant was permitted to: (1) use a patient advocate to communicate with the VA on his behalf and; (2) contact his doctors to make appointments and receive medications. (*Id.*). Defendant timely filed a Notice of Appeal. (Doc. 47).

**II.     Facts**

Defendant is a veteran who was injured during his military service. (Doc. 52, p. 101-02). He receives treatment for his injuries at the Birmingham Veteran's Affairs Medical Center. (*Id.* at p. 101). It is fair to say, based on the facts in the record, that throughout the time he has received treatment at the Birmingham VA Medical Center Defendant has become frustrated. (*Id.* at pp. 50-53, 70-78). In May 2012, Defendant called the VA and complained about an administrative-scheduling clerk. (*Id.* at pp. 69-70, 104-105). He did not believe the clerk understood her responsibilities in scheduling an appointment. (*Id.* at pp. 104-105). Defendant

2

was referred to Deborah Glenn, who worked as the Administrative Officer in the Patient Care Services Department and supervised the staff member in question. (*Id.* at pp. 82, 87, 105-06). In an hour long conversation, Glenn explained that the clerk was new and in training, and Defendant responded that this was not an isolated incident, rather a systematic problem, and he was not looking to be appeased. (*Id.* at pp. 71-72, 81-82). Glenn told Defendant that she was not in a position to make systematic changes to VA procedures. (*Id.* at p. 71).

The following day, Defendant called Glenn again. *(Id.* at p. 71). When Glenn tried to explain that she had already answered Defendant's question to the best of her abilities and could do nothing more to assist him, Defendant became very loud. (*Id.* at pp. 71-72). Over the course of the next two days, Defendant called Glenn seventeen times. (*Id.* at pp. 75-76). Glenn eventually stopped answering the calls and contacted security because the calls made it difficult for her to focus. (*Id.* at p. 71). Glenn finally referred Defendant to her supervisor, Cynthia Frazier. (*Id.* at p. 79).

Defendant contacted Frazier, who is a Nurse Manager over several departments at the Birmingham VA hospital. (*Id.* at pp. 79-80). After rescheduling his appointment to an earlier date, Frazier referred Defendant back to Glenn; however, Defendant continued to call Frazier to complain about the VA system. (*Id*. at pp. 81-82). Frazier testified that while she actually spoke to Defendant at least four or five times, he called her hundreds of times after their initial conversation. (*Id.*). Frazier told him that there was nothing more she could do to help him and transferred Defendant to a patient advocate. (*Id.* at p. 82). Nevertheless, Defendant continued to call Frazier's office. (*Id.*). In fact, his calls became more demanding and more forceful. (*Id.* at pp. 82-84). Feeling threatened, Frazier notified Floyd Walfield, Deputy Chief of Police, about

the calls. (*Id.* at pp. 83, 84-85). Chief Nurse Greg Eagerton also became involved. (*Id.* at p. 85). After Walfield and Eagerton stepped in, Defendant stopped calling Frazier. (*Id.*).

On December 19, 2014, Defendant called the Birmingham VA hospital to discuss his travel pay. (*Id.* at p. 107). Defendant lives in Tallahassee but travels to Birmingham to receive specialized care. (Doc. 52, pp. 23-24, 107-08, 110). For this reason, he is entitled to receive compensation for his travel costs. (*Id.*). Defendant learned that the Medical Center had enrolled his travel compensation in direct deposit, and was upset because he did not understand how the Medical Center had obtained his banking information. (*Id.* at pp. 108-09, 122-23). Previously, Defendant had given the Veterans Benefits Administration (the "VBA") permission to distribute his benefits by direct deposit. (*Id.* at pp. 23, 108-09, 122-23). But he had not given permission for the VBA to share that information with the Medical System or with the Veterans Health Administration (the "VHA"). (*Id.*).

Defendant first spoke with Amy Ho, a voucher auditor at the hospital. (*Id.* at pp. 18, 23-25, 108, 122-23). She told him that the VA had conducted a data match in 2012 for veterans with travel pay. (*Id.* at pp. 19, 25, 110, 122). After hearing this, Defendant became angry and began to curse. (*Id.* at pp. 19, 130). Ho offered to have Defendant's information removed from direct deposit, but Defendant declined and asked to speak with the privacy officer. (*Id.*). Ho then referred Defendant to Kim Moses, a privacy officer. (*Id.*). Moses requested that Defendant submit his concerns in writing. (*Id.* at p. 112). After speaking with Moses, Defendant resumed his calls to Ho. (*Id.* at pp. 20-22). Ho testified that each time Defendant called, the Caller ID "Local 1" appeared. (*Id.* at p. 25). This was an ID that she did not frequently see, and she stopped answering calls that day. (*Id.* at pp. 25-27).

Defendant called Ho again on Monday, December 22, 2014. (*Id.* at pp. 20-21). When Ho asked how she could help him, Defendant told her she could answer his question. (*Id.* at p. 21).

When Ho then told Defendant that she could not help him any more than she already had, Defendant once again began to curse at her. (*Id.*). She warned him that if he did not stop cursing she would disconnect the call. (*Id.*). When he continued to curse, Ho disconnected the call. (*Id.*). Defendant then called Ho another thirty-eight times that day. (*Id.*). On December 24, 2015, Defendant called Ho again. (*Id.* at pp. 21-22). He again asked her to answer his question, and said that he "could do this all day long." (*Id.*). When Ho informed Defendant once more that she could do nothing more to help him, he began to curse and told her that he "could care less if she went to hell." (*Id.*). Ho disconnected the call. (*Id.*). Defendant continued to call, but Ho turned down the volume on her phone. (*Id.*). Ho missed important calls from other veterans during that time period. (*Id.*).

Defendant then began to call the office of Libby McElroy, Assistant Chief of the Business Office at the Medical Center. (*Id.* at p. 49). In the past, Defendant had received assistance from McElroy with respect to travel-pay issues. (*Id.* at pp. 50-51). McElroy was unavailable, and Teresa Lewis, Administrative Support Assistant, answered Defendant's calls and forwarded them to McElroy's voicemail. (*Id.* at pp. 29, 30-31, 51). Although McElroy became aware of Defendant's concerns, she did not return his calls because she understood the issue had been resolved. (*Id.* at pp. 51-53). Defendant called McElroy's office every day from December 19 – February 3, 2015. (*Id.* at p. 32). When Lewis asked him why he continued to call, Defendant said that he was upset that McElroy was not answering his calls and accused Lewis of withholding his messages. (*Id.* at pp. 31-32, 37). On January 5, 2015, Lewis recorded twenty-eight calls from Defendant; on January 6, 2015, she recorded sixteen; and on January 9, 2015, she recorded seven calls during a one-hour and fifteen-minute time period. (*Id.* at pp. 33-36).

5

Lewis testified that these calls caused her stress and made it difficult for other patients to reach her. (*Id.* at pp. 37, 54-55, 58-59).

After learning of Defendant's repetitive calls to McElroy, Deputy Chief Walfield of the VA police instructed her to not answer Defendant's calls. (*Id.* at p. 59). Lewis was instructed to transfer Defendant's calls to Chief Walfield's desk. (*Id.*). She forwarded a total of about fifty to sixty calls. (*Id.* at p. 91). Walfield directed Defendant to stop making repetitive calls and offered to personally meet with Defendant to address his concerns, but the calls continued. (*Id.* at pp. 91-92, 93). Walfield also warned Defendant that if this continued, he would likely have to appear in court. (*Id.*). Defendant responded, "Fine. You do what you've got to do, and I'll do what I've got to do." (*Id.* at p. 93).

In late January, McElroy called Defendant. (*Id.* at pp. 53-54). This call was recorded by the VA police. (*Id.*). McElroy attempted to answer Defendant's questions. (*Id.*). For example, she told Defendant that the VHA received his banking information from the VBA pursuant to the VA's effort to use direct deposit. (*Id.*). Defendant asked how the VBA was authorized to give his banking information to the VA. (*Id.*). Unsatisfied with McElroy's response, Defendant asked her if she "actually believed her not answering him was going to make him stop calling." (*Id.*). McElroy requested that Defendant submit his complaint in writing so that he could get a written response and perhaps a right to an appeal. (*Id.* at p. 56). When he continued to argue with her, McElroy informed him that she could do nothing more to help him and that she would soon end the call. (*Id.*). Defendant began to raise his voice and curse, and asked sarcastically if she thought ending the call would make him go away. (*Id.* at pp. 56-59, 131).

Even after Defendant was issued a citation, and up until his arrest, Defendant continued to call the VA. (*Id.* at pp. 92-93). He testified that he had a personal obligation to get to the

6

bottom of the issue, as well as a responsibility to the other veterans who could have been affected by the VA's actions. (*Id.* at pp. 117, 121). Defendant also testified that he had experience with lost data and that it was wrong that the VA had taken charge of his life in this manner. (*Id.* at pp. 8, 121-122).

### III.    Standard of Review

"An appeal of an otherwise final sentence imposed by a United States magistrate judge may be taken to a judge of the district court, and this section shall apply … as though the appeal were to a court of appeals from a sentence imposed by a 'district court.'" 18 U.S.C. § 3742(h). "Review by the district court of a conviction before the magistrate is not a trial *de novo* but is the same as review by a court of appeals of a decision by a district court." *United States v. Pilati*, 627 F.3d 1360, 1364 (11th Cir. 2010), *quoting United States v. Peck*, 545 F 2d. 962, 964 (5th Cir. 1977). This court reviews the magistrate's interpretation of a criminal statute *de novo*. *United States v. Williams*, 790 F.3d 1240, 1244 (11th Cir. 2015), *citing United States v. Rojas*, 718 F.3d 1317, 1319 (11th Cir. 2013). It also reviews *de novo* whether a criminal statute is unconstitutionally vague. *United States v. Wayerski*, 624 F.3d 1342, 1347 (11th Cir. 2010).

Additionally, a defendant "may file a notice of appeal in the district court for review of an otherwise final sentence if the sentence … was imposed for an offense for which there is no sentencing guideline and is plainly unreasonable." 18 U.S.C. § 3742(a).

### IV.    Discussion

On appeal, Defendant's advances the following arguments: (1) the Magistrate Judge erred in finding that Defendant's conduct did not fall within the Safe Harbor provision of the Alabama Harassing Communications Statute, Ala. Code § 13A-11-8(b); (2) the Alabama Harassing Communications Statute is unconstitutionally vague, as applied to Defendant, because it

provides no objective standard against which his conduct could be measured; and (3) Defendant's sentence of probation with certain conditions is unreasonable. (Doc. 56, pp. 2-3). After careful review, and with the benefit of oral argument, the court disagrees and addresses each of these arguments in turn below.

      A.      **The Lion Share of Defendant's Conduct Does Not Fall Within the Safe Harbor Provision of Alabama Code § 13A-11-8(b)**

Alabama's Harrassing Communications Act, codified under Alabama Code § 13A-11-8(b), provides that "[n]othing in this section shall apply to legitimate business telephone communications." Ala. Code § 13A-11-8(b). Defendant asserts that his repeated calls to the Business Office of the Birmingham VA Medical Center were "legitimate business telephone communications" falling within the safe harbor provision of Alabama Code § 13A-11-8(b). Defendant argues that, even if his calls were made in a manner likely to harass and with the intent to harass, they were "legitimate business telephone communications," because they were telephone communications genuinely related to a lawful business activity. (Doc. 55, pp. 13-20). For the reasons explored below, and under the circumstances at issue here, the court concludes that Magistrate Judge properly found that the safe harbor provision does not apply to the majority of Defendant's communications.

Defendant contends that the addition of the adjective "legitimate" renders the otherwise non-ambiguous phrase "business telephone communications" unclear. (*Id.* at pp. 15-17). Because neither the safe harbor provision of Alabama Code § 13A-11-8(b) nor Alabama case law provide a clear definition of "legitimate business telephone communications," Defendant asks this court to use his construction of "legitimate business telephone communication" and find that his behavior fell within it. (*Id.*). As a part of this argument, Defendant has proffered two interpretations: "telephone communications that relate to a lawful business" (*Id.* at p. 16), or

8

"telephone communications that are actually, genuinely related to business activity" (*Id.* at pp. 16-17). However, as explained below, the court finds these interpretations unpersuasive.

To start, when a term is not defined in a statute, a court generally looks to, and applies, its plain meaning. That is, the court applies the commonly accepted definition of the undefined term. *See City of Montgomery v. Zgouvas*, 953 So. 2d 434, 442-43 (Ala. Ct. Crim. App. 2006)(quoting *Ex parte Gadsden Reg'l Med. Ctr.*, 904 So. 2d 234, 236 (Ala. 2004)). The term "legitimate" has several unambiguous meanings. In his motion for judgment of acquittal, Defendant cited to *Merrium-Webster* for the definition of "legitimate:" (1) "In accordance with the law : lawful"; (2) "In accordance with accepted standards or rules"; (3) "Reasonable : sensible"; (4) "Genuine : real"; and (5) "Born of legally married parents". (*See* Doc. 34, pp. 3-4; Doc. 56, p. 10). Consistent with the plain meaning of the term, the court finds that the plain meaning of "legitimate," as used in the statute, means "lawful, acceptable, reasonable, and genuine."[1] (*Id.*); (*Legitimate, Merrium-Webster Online* (August 26, 2016)).

In his reply, Defendant argues that this interpretation of Alabama Code § 13A-11-8(b) should be rejected because it renders the "safe harbor" language superfluous. (Doc. 59, pp. 2-3, *citing United States v. Fuentes-Rivera*, 323 F.3d 869, 872 (11th Cir. 2003)("when interpreting a statute, it is necessary to give meaning to all its words so that no words shall be discarded as meaningless, redundant, or mere surplusage"). For this reason, Defendant proposes that the safe harbor provision should be construed to encompass all communications genuinely related to business activity. (*Id.* at pp. 3-4). Defendant further asserts that differing privacy expectations

---

[1] The court finds that Defendant's proffered interpretations of "legitimate business telephone communication" confuse fundamental rules of grammar. As written, the adjective "legitimate" modifies the adjunct-noun clause, "business telephone communication," by further limiting its application as a whole. It is not the province of this court to give new meaning to an unambiguous law. Therefore, as written, and consistent with the Magistrate Judge's interpretation, the safe harbor provision within Alabama Code § 13A-11-8(b) protects communications made via telephone that lawfully, acceptably, reasonably, and genuinely address activities within the scope of a particular matter of business. *See* Ala. Code § 13A-11-8(b).

9

and rights exist between personal and business communications, and thus that the Alabama Legislature was cautious about employing a criminal statute to regulate business disputes. (*Id.*). But that argument is wholly without merit.[2]

The court's construction of the safe harbor provision does not render the language of Alabama Code § 13A-11-8(b) superfluous. In fact, the Alabama Court of Criminal Appeals has found that the safe harbor provision protects constitutionally permissible communications, which otherwise may have been proscribed under Alabama Code §§ 13A-11-8(b)(1)(a) or 13A-11-8(b)(1)(c). *See Donley v. City of Mountain Brook*, 429 So. 2d 603, 611 (1982)(finding that § 13A-11-8(b) contains a safeguard against infringing upon constitutionally protected areas by specifically providing that it has no application to "legitimate business telephone communications."); *see also Id.* at 612 (citing *People v. Klick*, 362 N.E.2d 329, 331-32 (Ill. 1977)(finding that the Safe Harbor Provision under Alabama Code Alabama Code § 13A-11-8(b) protects from prosecution constitutionally protected speech)).

Moreover, the record evidence supports the Magistrate Judge's finding that the majority of Defendant's conduct did not amount to "legitimate business telephone communications." (*See* Doc. 33, pp. 11-13; Doc. 39, pp. 2-6). Defendant argues that the Magistrate Judge erred when

---

[2] Defendant has not pointed to any authority to support his argument. Defendant cites to *Zgouvas* stating, "A personal call implicates the privacy interests of the recipient and 'must be considered in light of a person's right to be left alone'" (Doc. 59, p. 3, quoting *City of Montgomery v. Zgouvas,* 953 So. 2d 434, 442 (Ala. Crim App. 2006)), and that "the privacy interest is greatest with respect to private calls received in one's home or on a personal line" (*Id.*, quoting *South v. City of Mountain Brook,* 688 So. 2d 292, 296 (Ala. Crim. App. 1996)(explaining that Alabama's harassing communications statute protects "the sanctity of the home …")). However, neither *Zgouvas* nor *South* state that protecting the sanctity of the home is the only purpose, nor the primary purpose, of the state statute. Rather, these cases primarily adopt the reasoning of the court in *Yates v. Commonwealth*, 753 S.W. 2d 874 (Ky. App. 1988), and discuss the distinction between speech in a public forum and private telephone or written communication. *See Zgouvas*, 953 So. 2d at 440-41. Further, consistent with the Magistrate Judge's conclusion, Defendant's reliance on those cases' discussion of the term "private communication" and argument that Alabama Code § 13A-11-8(b) does not apply to telephone calls between two people over a private line when one of the participants is at a business, implies a truly expansive view of "public speech." (*See id.* at p. 3; Doc. 39, pp. 3-4, (*citing* Doc. 38, p. 4)). Defendant cites to no other authority for this proposition, and all indications are that a telephone call does not cease to be a "private communication" (as contemplated by the Alabama courts) merely because it is directed at a business employee or government official. (Doc. 39, p. 4).

finding his calls illegitimate, because he had a genuine underlying business concern. (Doc. 55, pp. 16-18). But as the Magistrate Judge correctly noted, "the problem with [Defendant's] argument is that it conflates the legitimacy of his ultimate motivation with the legitimacy of the individual calls themselves." (Doc. 39, p. 2).

The question is not whether there was an ultimately legitimate motivation, or purpose, underlying the intent to harass, but whether there was an actual, legitimate business *communication*. *See* Ala. Code § 13A-11-8(b)(1)(exempting "legitimate business telephone communications")(emphasis added). Here the statute's application turns on the presence, and absence, of "purpose." As Defendant has pointed out, statutes are to be construed in a manner that gives effect to each and every term therein. (Doc. 55, p. 18). Unlike Alabama Code § 13A-11-8(b)(1)(b) that prohibits telephone communication "with no purpose of legitimate communication" the safe harbor provision, states only that "[n]othing in this section shall apply to legitimate business telephone communications." Ala. Code § 13A-11-8(b). As written, the language of Alabama Code § 13A-11-8(b)(1)(b) calls for a subjective analysis of a defendant's purpose when engaging in objectively illegitimate communication; in contrast, the safe harbor provision merely calls for an objective analysis of a communication's legitimacy. Thus, when considering whether Defendant's phone calls to the VA were lawful, acceptable, and reasonable "business telephone communications" the court must consider whether Defendant acted as a reasonable and prudent person would under similar circumstances.

Here, Defendant made dozens of calls in a day to the same number. (Doc. 52, pp. 50-51, 69-88). Indeed, in total Defendant made hundreds of phone calls to the VA. (*Id.* at pp. 21, 46-49). He did so even after: (1) being told the person he sought was unavailable; (2) after leaving a voicemail message only moments before; (3) the individuals he contacted were unable to answer

11

his questions in any other way than previously answered, and/or; (4) another person within the chain of command was available to talk to him. (*Id.* at pp. 19-27, 31, 64, 112). During these calls, Defendant expressed that he was going to continue calling regardless of the answers given. (*Id.* at pp. 21-22, 31-32, 36, 46, 93). Further, when given alternative avenues of communication and resolution, Defendant refused to follow-up on any of these suggestions but rather continued his bombardment of phone calls. (*Id.* at pp. 56, 94, 112-15, 128-30).

The Magistrate Judge acknowledged that Defendant's early calls were legitimate business telephone calls, but properly found that they were no longer "legitimate" when Defendant continued calling, not in an effort to engage in reasonable communication, but rather as "a tactic to wear down the people he thought were stonewalling him." (Doc. 33, pp. 11-12; Doc. 39, p. 5). As the Magistrate Judge explained, even if the term "legitimate" can have multiple meanings, when applying the safe harbor provision's objective standard, any person of common intelligence would understand that he or she is not engaging in an acceptable, reasonable, nor genuine *communication*, when making repeated phone calls which are intended to merely harass people into doing what they have already explained they are unable to do, cannot do, or will not do. (Doc. 39, p. 2). Similarly, a person of common intelligence and reason would understand that he or she is not participating in acceptable, reasonable, or genuine *business* communication if, in the face of having already received an answer, he or she immediately and repeatedly calls again, with the intent to harass the recipient, and asks the same question (or makes the same statement) when reason dictates that the circumstances have not changed and the response will be the same. (*Id.* at p. 3).[3]

---

[3] This objective approach is consistent with the Alabama Court of Criminal Appeals' view in *Donley*, finding that under Ala. Code § 13A-11-8(b)(1), "legitimate business telephone communications" includes "a single telephone call made by a consumer who wishes to express his dissatisfaction over the performance of product or

For all of these reasons, the court finds that evidence of record supports the Magistrate Judge's decision finding the majority of Defendant's conduct did not fall within the safe harbor provision of Alabama Code § 13A-11-8(b).

> **B.  Evidence Is Sufficient to Sustain Defendant's Conviction of Two Counts of Harassing Communications under Ala. Code § 13A-11-8(b)(1)**

The Magistrate Judge correctly concluded that the Government established beyond a reasonable doubt that Defendant had made harassing communications, as charged in the Information, in violation of Ala. Code § 13A-11-8(b). Section 13A-11-8(h) provides that a person makes harassing communications, "if with intent to harass or alarm another person," he or she "[c]ommunicates with a person, anonymously or otherwise, by telephone, telegraph, mail, or any other form of written or electronic communication, in a manner likely to harass or cause alarm"; or "[m]akes a telephone call, whether or not a conversation ensues, with no purpose of legitimate communication"; or "[t]elephones another person and addresses to or about such other person any lewd or obscene words or language." Ala. Code § 13A-11-8(b)(1). The statute also makes clear, however, that "[n]othing in this section shall apply to legitimate business telephone communications." *Id.* Here, the Magistrate Judge correctly found that Defendant's conduct did not fall within the scope of Section 13A-11-8(b)(1)(c), because his communications did not contain any lewd or obscene language, and here. As a result, the Government was required to prove beyond a reasonable doubt that Defendant intended to harass or alarm another person.

On appeal, Defendant does not challenge the Magistrate Judge's finding that Defendant intended to harass or alarm VA employees. (Doc. 33, pp. 10-12).[4] Rather, Defendant argues that

---

service; a call by a businessman disturbed with another's failure to perform a contractual obligation". 429 So. 2d at 612, citing *Klick*, 362 N.E.2d at 331-32.

[4] The Defendant also does not challenge that the evidence of record supporting the Magistrate Judge's finding that Defendant violated Alabama Code § 13A-11-8(b)(1)(a) when, with the intent to harass or alarm, he

the Magistrate Judge's specific factual findings cannot be reconciled with his ultimate conclusion that Defendant had no purpose of legitimate communication. (Doc. 55, p. 14-15; Doc. 59, pp. 5-7). For the reasons discussed below, the court disagrees.

As previously noted, the Magistrate Judge found that Defendant did not violate Section 13A-11-8(b)(1) when he "made his first calls to each person with a legitimate business purpose." (Doc. 33, p. 11). However, when Defendant realized that he was not going to receive a satisfactory answer from the people he had called, Defendant's avalanche of calls transitioned from a few with a legitimate business purpose into an avalanche intending to harass. (*Id.*). The Magistrate Judge explained that, "[e]ven if the underlying motivation of obtaining the information he sought on behalf of himself and other veterans was still there, [Defendant] clearly intended the intervening calls (between his initial call and some potential future call in which someone would give him the answer he wanted) to cause sufficient annoyance and emotional distress to the VA employees that they would give him that answer." (*Id.* at pp. 11-12).

Defendant argues that even if Defendant resorted to harassing tactics in an attempt to get information about the VA's authority to obtain his financial information, these tactics do not negate the purpose of his communications. (Doc. 55 at 14-15). This argument, however, ignores the Magistrate Judge's conclusion that Defendant conflates the legitimacy of his initial motivation for making a few calls with his intent to harass and alarm in making a barrage of later calls. (Doc. 39, pp. 2-3). Defendant further contends that the magistrate judge "saw the two purposes—harassment and gathering information—as mutually inconsistent." (*Id.*). Again, Defendant is mistaken, the Magistrate Judge did not determine that the Defendant's purpose for each communication was, in fact, to gather information. (Doc. 33, pp. 11-13; Doc. 39, pp. 2-3).

---

communicated with another person by telephone in a manner likely to harass. (*See* Doc. 33, pp. 12-14; Doc. 55; Doc. 59).

To the contrary, the Magistrate Judge found that there could not have been a purpose of legitimate communication for the dozens (if not scores) of back-to-back calls made by Defendant, after being told moments before that he would not be able to reach the person he sought or that the answer, previously given, remained unchanged. (*Id.* at p. 12; Doc. 39, pp. 3). For these reasons the court finds that the evidence of record supports the Magistrate Judge's finding that Defendant, with the intent to harass, made telephone calls with no purpose of legitimate communication, in violation of Section 13A-11-8(b)(1)(b).

      **C.**    **Alabama Code § 13A-11-8(b) Is Not Unconstitutionally Vague As Applied to Defendant**

Defendant asserts that Section 13A-11-8(b) is unconstitutionally vague because it fails to present a reasonable and objective standard by which to judge his actions. (*See* Doc. 59, p. 8) The court disagrees. This argument was fully considered and rejected by the Alabama Court of Criminal Appeals in *Donley v. City of Mountain Brook*, 429 So. 2d 603 (Ala. Crim. App. 1982), *reversed on other grounds*, *Ex Parte Donley*, 429 So. 2d 618 (Ala. 1983); *see also Brooks v. City of Birmingham*, 485 So. 2d 385 (Ala. Crim. App. 1985)(citing to *Donley*, 429 So. 2d 603 (Ala. Crim. App. 1982)(finding that a city ordinance, based on Alabama Code § 13A-11-8, was not unconstitutionally overbroad)).

In *Donley*, the court thoroughly analyzed Alabama Code § 13A-11-8 for unconstitutional vagueness and overbreadth. *Donley,* 429 So. 2d at 606-614. The *Donley* court reasoned that the telephone could be used as an instrument to harass or alarm, and determined that the state has a legitimate interest in proscribing such intentional conduct where there is no legitimate purpose of communication. *Id.* at 613. The court further found that Section 13A-11-8, which prohibits telephone harassment, is clear and can be readily understood by persons of ordinary intelligence. *Id.* at 611; *see also id.* at 609 (citing *United States v. National Dairy Corp.*, 372 U.S. 29, 35

15

(1963)("The specific intent requirement precludes the application of this statute to constitutionally protected legitimate communications. The potential offender receives the necessary specificity of warning by the language of the statute."). Ultimately, the *Donley* court held that Alabama's harassment statute could be construed with "narrow specificity" so as to satisfy constitutional parameters and accomplish its intended purpose. *Id.* at 606-14. The court fully agrees with the *Donley* court's analysis.

Finally, Defendant's citation to the rule of lenity in connection with his vagueness argument is off the mark. *See United States v. Lanier*, 520 U.S. 259, 266 (1997)(examining that "the canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered"). As previously noted, the language of the statute, particularly the word "legitimate," is not vague. Applying the dictionary definition, the statute would be read to mean "lawful, acceptable, and reasonable business telephone communications." (*See* Doc. 34, pp. 3-4; Doc. 56, p. 10 (citing *Merrium-Webster Online* (August 26, 2016)).

For all the above reasons, the court finds that the application of Alabama Code § 13A-11-8(b) to Defendant's conduct is constitutionally permissible under the First and Fourteenth Amendments, and under Article One, Section Six of the Constitution of Alabama. *See* U.S. Const. amends. I, XIV; Ala. Const. art. I, § 6; *Ex Parte Frolik*, 392 So.2d 846, 847 (Ala. 1981).

**D.     Under 18 U.S.C. § 3563(b) the Conditions of Defendant's Probation are Not Unreasonable**

Finally, Defendant argues that the special condition of his probation that limits his communication with the VA to letters and communications through a patient advocate is unreasonable because it denies Defendant access to benefits and services he is entitled to as a

16

veteran. (Doc. 59, p. 11). Defendant also points out that contacting the VA in writing is more difficult because the VA's website does not provide addresses. (Doc. 56, p. 15).

Of course, Defendant's observation is correct. His probation *does* prohibit him from contacting the VA in the most efficient way possible, and it *will* hinder him from accessing education and vocational rehabilitation benefits. However, the court may impose "any condition of probation reasonably related to the factors set forth in section 3553(a)(1) and (a)(2) and to the extent that such conditions involve only deprivations of liberty or property as are reasonably necessary for the purposes indicated in section 3553(a)(2)." 18 U.S.C. § 3563(b).

The conditions of Defendant's probation are reasonably related to his misconduct. Defendant continually called the Birmingham VA all day, every day for nearly six weeks. He hindered the VA's ability to interact with other veterans and caused emotional distress for employees of the VA. The VA Deputy Chief of Police's warning to Defendant that he would have a citation issued against him should he refuse to cease calling the VA's office did not even faze Defendant. Similarly, Defendant was unresponsive to McElroy's suggestion that he consider alternative avenues in seeking solutions to his issue. Defendant simply ignored McElroy's offer to remove his name from the direct deposit list. Rather than respond reasonably to any one of these alternative solutions, Defendant insisted on incessantly calling the VA's office. This court agrees that "[i]n light of the nature and circumstances of the offense, and the history and characteristics of the defendant, it is clear that some restriction on [Defendant's] ability to communicate with VA medical facilities by phone were necessary to protect the VA from further harassing calls." (Doc. 56, p. 16). The conditions of Defendant's probation are directly linked to the nature of his actions and they are not unduly restrictive. They are due to be affirmed.

**V.     Conclusion**

Based on the foregoing, this court concludes that the Magistrate Judge's finding that Defendant is guilty as charged in Counts One and Two of the Information is due to be, and hereby is, **AFFIRMED**. The court further concludes that the condition of probation that Defendant not contact the business office of the VA by telephone is not unreasonable, and as a result, the sentence imposed by the Magistrate Judge is due to be, and hereby is, **AFFIRMED**.

**DONE** and **ORDERED** this August 26, 2016.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE